Frank J. Amsden, Respondent, *v.* George W. Jacobs, Appellant.

*An agreement explained by a receipt — evidence of the intention of a party to a contract, when inadmissible — secret intention to evade a contract.*

On April 29, 1891, George W. Jacobs gave Frank J. Amsden an order to purchase for him 25,000 bushels of July wheat in Chicago at one dollar and five cents per bushel. Amsden immediately wired the order to his correspondents in Chicago, who purchased the wheat for one dollar and four and one-half cents per bushel, to be delivered during the month of July. On May 9, 1891, Jacobs deposited with Amsden $1,562.50 as a margin or security, and took from him a receipt as follows :

"Received of G. W. Jacobs fifteen hundred sixty-two and 50-100 for margin on 25,000 bushels of Chicago wheat for month of July, 1891. I, the under-

signed, agree to carry said wheat until July 1st, without further margin, and the deal is not to be closed until so ordered by said G. W. Jacobs.

"Rochester, *May 9th,* 1891.                     F. J. AMSDEN."

On July thirty-first the wheat was delivered to Amsden's correspondents in the form of warehouse receipts, of which fact Amsden was notified; and on the same day he notified Jacobs and asked for instructions, but none were received from him.

On August fourth Amsden's correspondents drew a draft upon him for the balance due on the wheat, and attached thereto the warehouse receipts. Amsden notified Jacobs of the fact and asked him to make provision for it, which he neglected to do. Notice was then given Jacobs that unless he took the wheat and paid for it, or made arrangements for carrying it, Amsden would sell the same at the Chicago Board of Trade at its opening on August eleventh, and hold Jacobs for any deficiency. On August eleventh the wheat was sold at ninety-one and one-half cents per bushel.

In an action brought by Amsden against Jacobs to recover the deficiency arising upon such sale,

*Held,* that the true meaning of the receipt or agreement was that the wheat was not to be sold prior to July, unless so ordered by Jacobs;

That the sale thereof on August eleventh was justified, and that Jacobs was liable for the deficiency arising thereon.

Upon the trial of the action Jacobs was sworn as a witness, and was asked upon his direct examination whether, at the time he gave a certain order to purchase wheat, he intended to make an actual purchase thereof. In response to an inquiry of the counsel for the plaintiff, the defendant's counsel stated that he did not expect to prove that Jacobs' intention in that respect was known to the plaintiff. Objection being made, the question was excluded.

*Held,* that such ruling was proper.

A party cannot evade a contract or establish its invalidity by maintaining a secret intention to evade it, unknown to the person with whom he is contracting.

Appeal by the defendant, George W. Jacobs, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 15th day of April, 1893, upon the verdict of a jury for $2,201, rendered by direction of the court after a trial at the Monroe County Circuit.

*Marsenus H. Briggs,* for the appellant.

*Nathaniel Foote,* for the respondent.

Haight, J.:

This action was brought to recover a balance due upon a contract for the purchase of wheat. The plaintiff was a stock and grain

broker, having an office in the city of Rochester. On the 29th day of April, 1891, the defendant gave him an order to purchase for him 25,000 bushels of July wheat in Chicago at one dollar and five cents per bushel. The plaintiff immediately wired the order to Counselman & Day, his correspondents in Chicago, who purchased the wheat for one dollar and four and one-half cents per bushel, to be delivered during the month of July, but with the seller's option as to the time of delivery within the month. After the purchase and communication of the fact to the defendant, he, on May 9, 1891, deposited with the plaintiff $1,562.50 as a margin or security, and took from the plaintiff the following receipt:

"Received of G. W. Jacobs, fifteen hundred sixty-two and 50-100 (1,562.50) for margin on 25,000 bushels of Chicago wheat for month of July, 1891. I, the undersigned, agree to carry said wheat until July 1st, without further margin, and the deal is not to be closed until so ordered by said G. W. Jacobs.

"ROCHESTER, *May 9th*, 1891. F. J. AMSDEN."

On the thirty-first day of July the wheat was delivered to Counselman & Day in the form of warehouse receipts. They notified the plaintiff, and he on the same day notified the defendant and asked for instructions, but none were received from him. On August fourth Counselman & Day drew a draft on the plaintiff for the balance due them on the wheat, and attached the warehouse receipt. The plaintiff notified the defendant of the fact, and asked him to make provision for it, which he neglected to do. Thereupon, notice was given to him that unless he took the wheat and paid for it, or made arrangements for carrying it, the plaintiff would sell the wheat at the Chicago Board of Trade at its opening on August eleventh, and hold the defendant for any deficiency. The defendant made no reply, but left the city of Rochester; and thereupon, on the eleventh day of August, the wheat was sold at ninety-one and one-half cents per bushel. The defense relied upon was to the effect that the plaintiff had committed a breach of contract on his part in failing to carry the wheat until it was sold by direction of the defendant, and that the contract was illegal and void under the statute, for the reason that the parties had not intended that any grain should be purchased or delivered.

The first question must be determined from the written agreement forming a part of the receipt. After acknowledging the receipt of $1,562.50, the plaintiff agrees to carry the wheat until July first without further margin, " and the deal is not to ·be closed until so ordered by said G. W. Jacobs." The wheat was not only carried until July first, but it was carried until August eleventh, without further margin. The wheat was ordered sold by the plaintiff on August eleventh, after the defendant had neglected or refused to take care of it. It is claimed that the deal was not to be closed until so ordered by Jacobs. Is this a fair and reasonable construction of the language used? If so, the plaintiff could be required to carry the wheat for any time, no matter how distant. Under the margin paid he undertook to carry the wheat until July first, without further margin. After July first, he had the right to call for further margin if he so desired; but it would be useless for him to call for margin, provided he was under obligation to carry the wheat until it was ordered sold by the defendant. It consequently appears to us that the construction contended for is inconsistent with the preceding clause of the agreement, and that the true meaning is that the deal was not to be closed prior to the first of July unless so ordered by the defendant.

Upon the trial the defendant was sworn as a witness in his own behalf, and upon the direct examination was asked the following question : " At the time that you gave this order to Mr. Morse to purchase for you, as he has testified, did you intend to make an actual purchase of the wheat ? " The counsel for the plaintiff then inquired of the defendant's counsel if he expected to prove that the defendant's intention in that respect was known to the plaintiff or Mr. Morse, and the counsel for the defendant stated in answer thereto that he did not. Plaintiff's counsel then objected to the question, and the objection was sustained. It is now claimed that this ruling was erroneous, and that the exception taken thereto requires a new trial. In *Dwight* v. *Badgley* (60 Hun, 144) LAWRENCE, J., says, in reference to the admission of similar testimony : " While the answer to it would not have conclusively shown what the intention of the plaintiffs was in entering upon the course of dealing with the defendant, referred to by the witness, it involved an answer which the defendant was entitled to have presented to the jury, and which might have aided them in

determining what was the real intention of the parties." DANIELS, J., says: "If the question as to the defendant's intention had been answered, it might have been followed by further evidence indicating the intention of the plaintiffs to have been the same; but, without an answer to this question, it would be useless to offer to make such further proof." VAN BRUNT, P. J., dissenting, claimed that the defendant was not injured by the exclusion of the evidence, for the reason that there was no proof showing that the plaintiff had a similar intention. It thus distinctly appears, not only from the concurring opinion of DANIELS, J., but by the dissenting opinion of VAN BRUNT, P. J., that in order to render the evidence of any value, it must be shown that the intention sought to be shown was known to the plaintiff. And, in the case of *Kenyon* v. *Luther* (19 N. Y. St. Repr. 32) MARTIN, J., in delivering the opinion of the court, says: "While in the absence of evidence to the contrary, an illegal intent will not be presumed, but an opposite presumption will arise,  * * *  yet we think the defendants were entitled to prove that their intention was simply to pay differences, and not purchase wheat.  * * *  This might not have been sufficient to have sustained their defense,  * * *  but it was a step in that direction which they should have been permitted to take." Here we have a concession that the evidence would not have been sufficient to establish the defense. In the case under review, as we have seen, the defendant's counsel, in respect to the evidence offered, says that he did not expect to prove that defendant's intention was known to the plaintiff, thus shutting the door to that class of evidence. The evidence, if it had been received, would have constituted but a step in the direction of the defense alleged, and would have been insufficient to establish it; and, inasmuch as he had no intention or expectation of showing that the plaintiff had knowledge of such intent, it became worthless testimony, for one party cannot evade a contract or establish its invalidity by maintaining a secret intention to evade it unknown to the person with whom he is contracting.

The judgment appealed from should be affirmed.

DWIGHT, P. J., and LEWIS, J., concurred; BRADLEY, J., not sitting.

Judgment appealed from affirmed.